## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**THOMAS KIRKENDOLL,**[1]

      **Petitioner,**

**-vs-**                                         **Case No.  8:03-CV-246-T-27MAP**

**JAMES V. COSBY, et al,**

      **Respondents.**

_____/

## ORDER

Petitioner, a State of Florida inmate, initiated these proceedings *pro se* by filing a petition for habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  Petitioner challenges his 1998 conviction of robbery in the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent has filed a response to the petition (Dkt. 10), and Petitioner has filed a reply thereto (Dkt. 14).  Having considered the record, applicable statutes, and controlling case law, the Court finds that Petitioner has not met the criteria for relief under § 2254.

### Background

On September 27, 1997, the desk clerk at the Americana Hotel in Clearwater, Florida, was robbed. Petitioner, a former employee of the hotel, was charged by Information on October 9, 1997 with robbery with a firearm, a first degree felony punishable by a term of years not exceeding life imprisonment, *see* Fla. Stat. § 812.13(2)(a).

Represented by court-appointed counsel, Petitioner proceeded to a trial by jury on December 17, 1998 on an amended Information charging him with robbery, a second

_____

[1]Petitioner's state court proceedings were pursued under the last name "Kirkendall" and his postconviction proceedings under the last name "Kirkendoll".

degree felony punishable by a term of imprisonment not exceeding 15 years, *see* Fla. Stat. § 812.13(2)(c). Petitioner was found guilty and after being adjudicated a prison releasee reoffender,[2] was sentenced to a term of 15 years.

Represented by an assistant public defender, Petitioner raised the following issues on direct appeal:

1. The trial judge erred in sentencing [Petitioner] as a prison releasee reoffender as section 775.082(8), Florida Statutes (1997), is unconstitutional because it violates the separation of powers clause, substantive due process, and is void for vagueness; and

2. Whether the trial judge's belief that he did not have discretion under the Prison Releasee Reoffender [Punishment] Act ["PRRPA"] to impose anything but the mandatory sentence prescribed by the act when sentencing [Petitioner] requires reversal of the sentence imposed under the Act.

Dkt. 12, Exs. 001 and 007. On January 21, 2000, the state district court rejected Petitioner's claim that the PRRPA was unconstitutional, but reversed his sentence based on its findings in *State v. Cotton*, 728 So. 2d 251, 252 (Fla. 2d DCA 1998), and *Coleman v. State*, 739 So. 2d 626, 627 (Fla. 2d DCA 1999), that the trial court, and not the prosecutor, was responsible for determining the applicability of the statutory exceptions to the mandatory sentences otherwise required under the PRRPA. *See Kirkendall v. State*, 749 So.2d 571 (Fla. 2d DCA 2000) ("*Kirkendall I*"). On August 16, 2000, Petitioner's sentence was vacated and a mandatory sentence of 15 years as a prison releasee

---

[2]The Court takes judicial notice of information available at the Florida Department of Corrections Information Network, http://www.dc.state.fl.us/, viewed March 21, 2006. *See* Fed. R. Evid. 201. Following his convictions in Pinellas County, Florida, of failure to appear, obstruction of a criminal investigation, and grand theft, Petitioner was sentenced on July 27, 1995 to a 5-year term of imprisonment on each conviction. Petitioner was placed in the custody of the Florida Department of Corrections on August 3, 1995, where he remained until his release on April 17, 1997. *See* Dkt. 12, Ex. 016, Vol. III at 58. The robbery that is the subject of the instant petition occurred on September 27, 1997.

reoffender was again imposed. After extensive appellate review,[3] Petitioner's original sentence was left intact.

While his direct appeal was pending, Petitioner filed a *pro se* application for state post-conviction relief under Fla. R. Crim. P. 3.850 contending that trial counsel was ineffective for: (1) failing to file a motion to suppress statements Petitioner made to the police; (2) failing to file a pretrial motion to suppress an out-of-court identification made based on an impermissively suggestive photo array; (3) failing to file a motion to suppress a hat found near the crime scene; (4) failing to object to statements the prosecutor made based on facts not in evidence; and (5) the cumulative effect of the omissions of trial counsel led to an unfair trial.  *See* Dkt. 12, Ex. 017. On April 29, 2002, the state trial court summarily denied Petitioner's Rule 3.850 motion. The state district court affirmed, without a written opinion, on July 3, 2002.  *See Kirkendoll v. State*, 825 So.2d 384 (Fla. 2d DCA 2002) (table decision).

On September 18, 2002, Petitioner filed a *pro se* petition for state habeas relief alleging that appellate counsel was ineffective by not challenging (1) the trial court's decisions to allow testimony regarding exculpatory statements he made to the investigating officers and the admission of a hat found at the robbery scene into evidence, and (2) whether the testimony of out-of-court identifications was inadmissible because the photo array used for the identifications was unduly suggestive. The state district court denied the petition on October 22, 2002, without written opinion. *Kirkendall v. State*, 833 So.2d 132

---

[3] The Florida Supreme Court granted Petitioner's application for discretionary review of *Kirkendall I*. On May 17, 2001, the Florida Supreme Court vacated the reversal of Petitioner's sentence and remanded the case for consideration under *Grant v. State*, 770 So. 2d 655 (Fla. 2000), and *State v. Cotton*, 769 So.2d 345 (Fla. 2000).  *See Kirkendall v. State*, 786 So. 2d 1171 (Fla. 2001).  In turn, on July 13, 2001, the state district court remanded the case to the state trial court for reconsideration of Petitioner's sentencing in light of the Florida Supreme Court's decision.  *See Kirkendall v. State*, 789 So.2d 513 (Fla. 2d DCA 2001).

(Fla. 2d DCA 2002) (table decision). On December 13, 2002, Petitioner's motion for rehearing was denied.

Petitioner filed his federal habeas petition on February 13, 2003 (Dkt. 1).  In his petition, Petitioner asserts the following claims for relief:

1. Petitioner received ineffective assistance of trial counsel when [trial] counsel failed to file any pretrial motion or object to Petitioner's police interrogation before he was given his *Miranda* rights;

2. Ineffective assistance of [trial] counsel and trial court error by allowing exculpatory statements into trial;

3. Ineffective assistance of [trial] counsel and violation of Petitioner's constitutional right to due process . . . where trial counsel failed to file any motion to suppress the photo-pak [sic] and failed to preserve this issue for direct appeal;

4. Ineffective assistance of trial counsel and trial court error. Trial counsel failed to preserve for direct appeal the introduction of a "hat" found near the crime scene . . . . [and the] trial court erred in allowing evidence without any substantiation into the trial violating the "rules of evidence" and Petitioner's rights to due process;

5. Petitioner contends that he was sentenced under an unconstitutional statute.

Dkt. 1.

Acknowledging that the petition is timely, Respondent argues that Petitioner is not entitled to relief in this Court because his claims fail to satisfy the criteria for relief under 28 U.S.C. § 2254(d) and (e). For reasons set forth below, the Court agrees.

### Standard of Review

Where a state court initially considers issues raised in a petition for federal habeas relief and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). Pursuant to § 2254(d), habeas relief may not be granted with

respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002).

Where no Supreme Court precedent is on point, or the precedent is ambiguous, the state court's conclusion cannot be found to be contrary to clearly established federal law. *Mitchell v. Esparaza*, 540 U.S. 12, 17 (2003).  "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

**Evidentiary Hearing/Appointment of Counsel**

Petitioner acknowledges that there is no constitutional right to assistance of counsel in post-conviction proceedings. *See Hooks v. Wainwright*, 775 F.2d 1433, 1438 (11th Cir. 1985). He contends, nonetheless, that since the time at which "a motion to suppress a statement is made in criminal proceedings is considered a 'critical stage' constitutionally requiring the assistance of counsel to meaningfully afford Petitioner his constitutional right, counsel should be appointed to advance the merits of his *Miranda* claim before a judicial determination" is made on his request for habeas relief (Dkt. 14 at 11-12).

Under the rules governing federal habeas relief, appointment of counsel prior to an evidentiary hearing is necessary if the petitioner qualifies to have counsel appointed under 18 U.S.C. 3006A. *See* Rule 8(c), Rules Governing Section 2254 Cases (2004). Otherwise, appointment of counsel is only warranted when due process or the interests of justice require it. *McBride v. Sharp*, 25 F.3d 962, 971 (11th Cir. 1994); *Hooks*, 775 F.2d at 1438. The Court has carefully reviewed the record and concludes that it can adequately assess Petitioner's claims without further factual development. *See Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). No additional evidentiary proceedings are, therefore, required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001). Petitioner has not otherwise demonstrated that appointment of counsel is necessary for a just resolution of his claims.

**Discussion**

In Grounds One through Four, Petitioner asserts that he was denied the effective assistance of counsel. These claims were raised in Petitioner's Rule 3.850 motion. Petitioner raised the sentencing issue presented in Ground Five on direct appeal. To the

extent that these claims were raised in state court in federal constitutional terms, they are properly exhausted.  *See* 28 U.S.C. § 2254(b)(1).

**Procedural Default**

In Ground Five Petitioner asserts that his right to due process was violated when the State furnished notification of its intent to seek sentencing under the PRRPA on the charge in the original Information but failed to provide him the same notification when the Information was amended.  This claim was not raised by Petitioner on direct appeal, in his Rule 3.850 motion, or in his state habeas petition (Dkt. 2 at 13).

Respondent argues that because Petitioner did not raise this issue at trial or on direct appeal, the issue is procedurally defaulted under state law.  This circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922, 104 S. Ct. 290, 78 L. Ed. 2d 266 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990) (under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion).

Claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed.[4]  *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case and give Petitioner the opportunity to exhaust this claim because it could have and should have been preserved at trial and

---

[4]*See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

raised on direct appeal. *See* Fla. R. Crim. P. 3.850(g).[5] The claim has not been exhausted and is now procedurally barred in state court.

Therefore, unless Petitioner can show either cause and prejudice or that the actual innocence exception applies, this claim is procedurally defaulted. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. at 735 n.1 (if petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes). Cause must ordinarily be something external to the defense. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152 (1982).

To the extent Petitioner's assertion that he is "not a trained legal advocate and is without sufficient knowledge of the precision pleading requirements of either state post-conviction or federal habeas corpus proceedings," *see* Dkt. 14 at 13, may be read as an attempt by Petitioner to overcome the procedural default by establishing cause, the argument fails. A petitioner's failure to act or think like a lawyer cannot be cause for failing to assert a claim at the state post-conviction level. *See Smith v. Newsome*, 876 F.2d 1465, 1466 (11th Cir. 1989).  Petitioner's lack of legal training cannot be considered cause for the purposes of excusing the procedural default that occurred in this case. *See Harmon v. Barton*, 894 F.2d at 1276.

---

[5]Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995).

Petitioner offers no other reason for his failure to raise this claim in state court and the Court discerns no reason that would amount to good cause to overcome the state procedural default. Having failed to allege or show that factors external to the defense prevented the presentation of this claim on appeal, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

An exception to the "cause-and-prejudice" requirement was recognized in *Sykes.* Habeas relief would not be barred for a victim of a "miscarriage of justice," referred to as the "actual innocence" exception. *Id*. at  90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schulp v. Delo*,  513 U.S. 298, 316 (1995). In this context, petitioner must demonstrate that he has newly discovered evidence that if presented at trial would establish factual innocence rather than mere legal insufficiency.  *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not present any evidence of "factual" innocence that was not available at trial. Without such a showing, Petitioner cannot demonstrate a colorable claim of actual innocence. *Id*.

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of his procedurally defaulted claim.  *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Ineffective Assistance of Counsel**

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A state court denial of an ineffective assistance of counsel claim does not have to cite federal law as authority for its decision so long as it is not inconsistent with the holding in *Strickland*. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. at 17; *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). Thus, to establish that he is entitled to relief on these claims, Petitioner must establish that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his Rule 3.850 motion lacked merit. Petitioner has failed to meet this burden.

**Grounds One and Two**

In Ground One of his petition, Petitioner asserts that trial counsel's performance was deficient because he failed to move to suppress statements Petitioner made to the police before being informed of his *Miranda* rights.[6] Petitioner also asserts that trial counsel was ineffective in failing to object to references to Petitioner's statements on the basis that the questioning occurred pre-*Miranda*. In Ground Two, Petitioner alleges that trial counsel

_____

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

rendered ineffective assistance in failing to object when the state trial court allowed "exculpatory" statements Petitioner made to the police to be introduced.

In his memorandum of law, Petitioner expands the scope of this claim to include an allegation that the state trial court erred in granting the prosecutor's motion in limine to preclude use of Petitioner's statements as "inadmissible hearsay" and then rescinding the evidentiary ruling after the defense rested its case. In conclusory fashion, he faults his attorney for not preserving this issue for appeal.  Because these issues are inextricably intertwined, they will be discussed together.

At the time of the robbery, Petitioner was living at the Bay Escalade Apartments in Clearwater, Florida.  In his memorandum of law filed in support of his petition, Petitioner states that on the evening of September 27, 1997, he had been at his apartment drinking beer all evening[7] while caring for children.  At approximately 12:00 a.m., Detective Bolton and Officer Merritt arrived at the apartment.  Petitioner stepped outside to talk with the officers.

According to Petitioner, they positioned themselves such that an officer was standing on either side of him.  Detective Bolton testified that Petitioner was told that he was not in custody before any questioning began (Dkt. 12, Ex. 016, Vol. II at Tr. 241). Petitioner was not read his *Miranda* rights. The officers questioned Petitioner about his activities during the evening.  Petitioner states that although he was intoxicated, he tried

---

[7]According to the Arrest Affidavit completed by Officer Merritt, Petitioner was placed under arrest at 1:15 a.m.  Officer Merritt stated therein that there was an indication that Petitioner was under the influence of alcohol when he was taken into custody. *See* Dkt. 12, Ex. 016, Vol. III at R. 001.  Detective Bolton testified that Petitioner smelled as if he had been drinking beer, but he was not intoxicated when he was questioned (Dkt. 12, Ex. 016, Vol. II at Tr. 241). Petitioner does not assert that his voluntariness in responding to the officers questions was overborne by his consumption of alcohol. *See Hubbard v. Haley*, 317 F.3d 1245, 1253 (11th Cir. 2003).

to answer the officers' questions to the best of his ability. Petitioner told the officers that he was at home all evening.  After further questioning, however, Petitioner stated that he had gone out between 9:30 and 10:00 p.m. to buy beer at a nearby convenience store.

In his Rule 3.850 motion, Petitioner asserted that his attorney was ineffective in failing to file a motion to suppress the statements he made to the officers during the interview. In its order denying Petitioner's motion, the state trial court found:

> Defendant alleges that counsel was ineffective for failing to file a pretrial motion to suppress statements made to police. Defendant reportedly told police he was at his residence throughout the evening of the robbery, later adding that he left between 9:30 and 10:00 to buy beer at the Pick-Quick. These statements were introduced by the State to rebut alibi witness David Brown's testimony that Defendant was with him playing cards that evening. Defendant argues counsel should have moved to suppress these statements before trial or raised a contemporaneous objection to their admission during trial. Defendant argues that the statements were made while he was in custody, before being advised of his *Miranda* rights.
>
> Defendant was not in custody at the time he made the aforementioned statements to police. See Exhibit A: Excerpts from Trial Transcript (pp. 241, 250-252). Because Defendant was not in custody at the time of the statements, the officers were not required to read him his *Miranda* rights. *See Cummings v. State*, 780 So.2d 149 (Fla. 2d DCA 2000). Counsel, therefore, cannot be said to be ineffective for failing to move to suppress the statements. *See McCord v. State*, 795 So.2d 101 (Fla. 5th DCA 2001). This claim is denied.

Dkt. 12, Ex. 018 at 1-2.  The state trial court's determination on the custody issue is a mixed question of fact and law that is not entitled to the statutory presumption of correctness accorded state court decisions under 28 U.S.C. § 2254(e).  Notwithstanding, this Court must give deference to unrebutted findings of fact made by the state trial court in the course of deciding the issue. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001).

While he contends that his *Miranda* rights were violated, in the memorandum of law filed with his petition, Petitioner concedes that he was not in custody when he spoke with the officers, *see* Dkt. 2 at 2-3.  He asserts instead that the officers violated his right against self-incrimination by questioning him "under circumstances *suggesting* that [he] was not free to leave without first being advised of his *Miranda* rights" (Dkt. 14 at 5). The record confirms that trial counsel did not file a pretrial motion to suppress Petitioner's statements. Apparently, as a matter of strategy, trial counsel was planning to elicit testimony from Detective Bolton regarding Petitioner's exculpatory statements on cross examination, which prompted the State to file a motion in limine requesting that trial counsel be precluded from pursuing this line of questioning (Dkt. 12, Ex. 016, Vol. II at 84).

In *Miranda*, the Supreme Court held that evidence obtained as a result of a *custodial interrogation* is inadmissible as having been obtained in violation of the Fifth Amendment unless the defendant was first advised of his right to have counsel present, his right to remain silent and if he gave up those rights, anything he said could be used against him. *Miranda*, 384 U.S. at 469-73. Generally, the prosecution may not introduce communicative or testimonial evidence at trial unless it demonstrates that the evidence was obtained in compliance with *Miranda* or satisfies one of the exceptions to *Miranda*'s exclusionary rule.

"Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 478. The protections of *Miranda* do not, however, extend to voluntary statements made to law enforcement officers.  *Id*.

An officer's obligation to administer *Miranda* warnings does not attach until "'there has been such a restriction on a person's freedom as to render him 'in custody.' " *See Stansbury v. California*, 511 U.S. 318, 321 (1994) (citation omitted). To determine whether a suspect is in custody, the objective circumstances of the situation are assessed from the perspective of a reasonable person in the suspect's position. *See United States v. Long*, 866 F.2d 402, 405 (11th Cir. 1989) ("A suspect is considered in custody if a reasonable person would believe that he were not free to leave; for example, if the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled."). While courts must consider the totality of the circumstances when making this determination,[8] ultimately, "the inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (quotation omitted). The Supreme Court has rejected the argument that *Miranda* "be extended to cover interrogation in non-custodial circumstances after a police investigation has focused on the suspect," where the defendant, without being advised of his *Miranda* rights, made incriminating statements to Government agents during an interview in a private home. *See Beckwith v. United States,* 425 U.S. 341, 345 (1976).

Petitioner does not present sufficient factual allegations to support his claim. Nothing in the record indicates that his statements were involuntary or that he was coerced during the questioning. Petitioner's bare assertion that he was not free to leave because there was an officer positioned on either side of him, standing alone, is not sufficient to support a finding that he was subjected to a "custodial interrogation" which triggered the officers'

---

[8]*See Devier v. Zant*, 3 F.3d 1445, 1458 (11th Cir. 1993), *cert denied*, *Devier v. Thomas*, 513 U.S. 1161 (1995).

obligation to give him his *Miranda* warnings.   *See* Dkt. 2 at 2. The officers told Petitioner that he was not in custody.  The pre-*Miranda* exchange between the officers and Petitioner does not reveal any of the significant restraint of freedom characteristics of a custodial interrogation. Having reviewed the record and controlling case law, this Court concludes that there was no reasonable basis for trial counsel to have moved to suppress Petitioner's statements under *Miranda*.

In short, there was no *Miranda* violation about which to complain. The failure to file a motion to suppress was not deficient performance nor was Petitioner prejudiced thereby. The statements were not excludable under *Miranda*. Trial counsel is not ineffective for failing to present a meritless issue. Having failed to establish that trial counsel's performance was deficient, Petitioner cannot satisfy *Strickland*'s two-prong test.

As to Petitioner's assertion that trial counsel was ineffective for failing to object to testimony regarding his statements to the officers and that the state trial court erred in allowing the State to present testimony in contradiction to an order it entered excluding that testimony, these claims are also refuted by the record.  The record reflects that the prosecutor made a motion in limine to preclude trial counsel from cross-examining Detective Bolton regarding what she characterized as Petitioner's "self-serving" responses to questions put to him during the initial interview.  Trial counsel responded that he had no objection to the motion so long as the door to that line of questioning was not opened on direct examination.

The state trial court reserved ruling on the prosecutor's motion after hearing from the attorneys, stating: "We will deal with it then.  I think that your motion should be granted as far as I can see what you are talking about, but we will see how it goes on direct

examination" (Dkt. 12, Ex. 016, Vol. I at 83).  Thus, Petitioner's argument that the state trial court erred in allowing the State to present testimony in contradiction to an order it entered excluding said testimony lacks merit.

Petitioner did not testify during his trial. David Brown, Petitioner's next door neighbor, presented an alibi for Petitioner, testifying that the two of them were together at Brown's apartment when the robbery occurred (Dkt. 12, Ex. 016, Vol. II at 216-28).  Brown testified that he first saw Petitioner that evening between 7:00 and 7:15 p.m. while Brown was waiting for a pizza delivery.  According to Brown, Petitioner was "next door babysitting two small children for [Brown's] neighbor." *Id*. at Tr. 217. Brown testified that Petitioner was with him for about 45 minutes before leaving to take pizza to the children. *Id*. at Tr. 218.

Petitioner returned to Brown's apartment at approximately 8:30 p.m. and they played cards for "about" 45 minutes.  *Id*. at Tr. 219.  Brown testified that he had no specific recollection as to when the card game began and ended but was certain that he and Petitioner began playing cards "by 9:00 o'clock" and that Petitioner left shortly after 9:00. *Id*.

On cross-examination, Brown acknowledged that he was not "sure exactly what time it was," but Petitioner was with him "anywhere from between 8:30 and 9:39." *Id*. at Tr. 222. Brown did not know when the robbery occurred. *Id*. The prosecutor attempted to impeach Brown's testimony with a statement he made in November 1997 to an investigator from the Public Defender's Office that Petitioner arrived at Brown's apartment sometime between 8:30 and 9:30 and stayed with the Browns until 11:00 p.m.  Brown recalled being interviewed by the investigator but did not recall making that statement. Brown did not recall being advised by anyone of the time of the robbery. *Id*. at Tr. 223. Brown further

testified that he did not recall changing the testimony he gave the investigator after the investigator told him what time the robbery occurred.

Brown acknowledged that during his deposition taken a week before the trial that he stated that Petitioner arrived between 9:00 and 9:45 to play cards. *Id*. at 224. While he acknowledged several times that he was unable to be specific about the time, Brown repeatedly stated that Petitioner was at his house at 9:00, leaving shortly after 9:00 p.m. *Id*. at Tr. 219.

After Brown's testimony, Petitioner informed the state trial court that he did not want to testify and his attorney rested. *Id*. at Tr. 229-30. The State then moved to reopen its case to present testimony in rebuttal. The State first elicited testimony from the investigator who questioned Brown on November 11, 1997. The investigator informed Brown at that time that the robbery occurred at 9:00 p.m. *Id*. at Tr. 235.

When the State called Detective Bolton to testify, trial counsel objected to the use of statements made to him by Petitioner during the interview at Petitioner's apartment on grounds that the State had previously moved to limit testimony regarding those statements (Dkt. 12, Ex. 016, Vol. II at Tr. 237). Petitioner's attorney argued that had Petitioner taken the stand to testify, what he said to Detective Bolton might have been relevant, but that Brown was the only witness the defense called and since Detective Bolton never talked to Brown, he could not rebut Brown's testimony. Trial counsel argued that to allow Detective Bolton to testify that Petitioner did not tell the officers that he was with Brown at the time of the robbery would be a comment on Petitioner's silence (Dkt. 12, Ex. 016, Vol. II at 246-47).

The state trial court agreed to hear the State's proffer of Detective Bolton's testimony.   After the proffer, Petitioner's attorney argued that the State's decision to file the motion in limine affected his defense strategy in light of Petitioner's statements to Detective Bolton and influenced Petitioner's decision whether to testify (Dkt. 12, Ex. 016, Vol. II at Tr. 244). Trial counsel asserted that under these circumstances, it would be unfair to allow the State to inquire into the matter.

Concluding that Detective Bolton's proffered testimony related to statements made by Petitioner rather than the exercise of his right to remain silent, the state trial court denied trial counsel's objection (Dkt. 12, Ex. 016, Vol. II at Tr. 245-249). Detective Bolton then testified that Petitioner initially stated that he was at home all evening when he was interviewed at his apartment shortly after the robbery.  After further questioning, Petitioner admitted that he did leave the apartment between 9:30 and 10:00 p.m. to buy beer at a nearby convenience store.  Detective Bolton also testified that Petitioner did not mention David Brown or tell the officers that he  spent part of the evening drinking beer and playing cards with anyone, specifically David Brown (Dkt. 12, Ex. 016, Vol. II at 241).

Petitioner does not dispute that on rebuttal, when the State sought to elicit testimony from Detective Bolton regarding Petitioner's statements, his attorney objected (Dkt. 12, Ex. 016 at Tr. 237-244). Petitioner contends, however, that the state trial court's evidentiary ruling allowing the use of his statements in rebuttal ran afoul of Florida's evidentiary rules, effectively denying him his right to a fair trial. Petitioner relies on *Halsell v. State*, 672 So.2d 869 (Fla. 3rd DCA 1996). His reliance is misplaced because *Halsell* is distinguishable.

Here, the state trial court reserved ruling on the State's motion in limine. When trial counsel objected to Detective Bolton testifying in rebuttal to Petitioner's alibi defense, the

state trial court heard argument from the parties and a proffer of the anticipated testimony

before deciding that:

> The clear intent in putting Mr. Brown on is to create an alibi.  Mr. Brown
> comes into court under oath and says that the defendant was playing cards
> with me at the exact time the crime was committed.  He did not say it in those
> words, but that was the effect of his testimony.  That is a classical alibi and
> if the State has any evidence that rebutts [sic] that alibi, they are entitled to
> put it on. This particular statement that has been proffered here is not a
> comment on the defendant's right to remain silent.  It is a comment on what
> the defendant told him on the night of the incident when the defendant was
> arrested and talks with this detective about where he was earlier in the
> evening.
>
> And in fact, he did not mention he was playing cards with an alibi witness,
> which the jury may think, or may not it is significant; okay?  I am going to
> permit the testimony.

Dkt. 12, Ex. 016, Vol. II at 246-47.  When trial counsel queried the state trial court regarding

the scope of its ruling, he was informed:

> What I am permitting is that testimony regarding that the defendant did not
> mention anything about Mr. Brown and the defendant said he had been in
> the apartment all night and then later said, well, I went to get some beer
> between 10:00 and 10:30, or whatever, that statement about going to the
> convenience store or wherever he went to buy some beer.  That is what the
> defendant said about where he was.  And he, according to the testimony of
> the detective, he said nothing about Mr. Brown or playing cards with Mr.
> Brown.
>
> So I am going to permit that for the reasons I have stated.

Dkt. 12, Ex. 016, Vol. II at 248-49.

It is well settled that a defendant's false exculpatory statements offered in

explanation of the conduct which is the subject of a criminal charge against him are

admissible as substantive evidence tending to show guilt. *See Smith v. State*, 424 So.2d

726, 730 (Fla. 1982), *cert denied*, 462 U.S. 1145 (1983); *Brown v. State*, 391 So.2d 729

(Fla. 3d DCA 1980). Because Petitioner went beyond a declaration of innocence and asserted an affirmative alibi to the crime charged, the credibility of Petitioner's alibi was a material issue for the jury to decide. Since Petitioner's earlier exculpatory statements conflicted with his alibi, they were relevant to this issue. *Douglas v. State*, 89 So.2d 659 (Fla. 1956); *Walker v. State*, 495 So.2d 1240, 1241 (Fla. 5th DCA 1986). The ruling on trial counsel's objection was consistent with the state's evidentiary law.

As to Petitioner's contention that the state trial court erred in failing to take into account the "rule of completeness,"[9] depriving the jury of an opportunity to hear his statement to the police in context, *see* Dkt. 3 at 6, though couched in constitutional terms, this claim presents a state law issue for which this Court's subject matter jurisdiction does not extend. A federal court is to entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254.  A state's interpretation of its own laws and rules provides no basis for federal habeas corpus relief absent a violation of due process. *See Beverly v. Jones*, 854 F.2d 412 (11th Cir.1988).  Petitioner has not demonstrated that such an egregious event befell him.

Finally, Petitioner asserts that testimony regarding his statements to the officers was "inadmissible hearsay."  Having reviewed the testimony in question, the Court finds that an hearsay objection to this testimony would have been meritless because the testimony was

---

[9]In Florida, the rule of completeness is codified as section 90.108, which provides that when a "writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part of any other writing or recorded statement that in fairness ought to be considered contemporaneously." § 90.108, Fla. Stat. (1997); *Christopher v. State*, 583 So.2d 642, 645-46 (Fla. 1991). The rule has been applied to conversations as well. *See, e.g., Reese v. State*, 694 So.2d 678, 683 (Fla.1997) (citing *Johnson v. State*, 608 So.2d 4 (Fla.1992), *cert. denied*, 508 U.S. 919 (1993)).  The determination of whether or not a statement is part and parcel of an introduced statement is a matter within the discretion of the state court.  *Id.* at 683-84.

clearly not hearsay.  *See* Fed. R. Evid. 801(c) (Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted'" Fla. R. Evid. 90.801(1)(c); (if the statement is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case).

Detective Bolton's testimony was presented to rebut Petitioner's alibi.  Testimony regarding Petitioner's inconsistent statements was not presented for the truth of the matter asserted, but rather to demonstrate that Petitioner's account of his whereabouts on the night the robbery occurred differed from Mr. Brown's testimony. This is not hearsay.

The state court rejected Petitioner's assertions of ineffective assistance of counsel and trial court error in allowing the use of his exculpatory statements. The Court finds that Petitioner has failed to establish that the state court's adjudication was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). This ground, therefore, lacks merit.

**Ground Three**

In this claim, Petitioner asserts that  trial counsel was ineffective for failing to move to suppress the desk clerk's pre-trial identification on grounds that the identification procedure was tainted by use of an impermissively suggestive photo array.  According to Petitioner, his photograph used in the photo array shown to the desk clerk was enhanced and his facial features more pronounced than others depicted in the photo display and the number assigned to his photograph was different from the numbers assigned to the other photographs.  In its order rejecting this claim, the state trial court found:

Defendant alleges that counsel was ineffective for failing to file a motion to suppress identification made from an impermissibly suggestive photo-pack. Defendant also alleges counsel was ineffective for not objecting when Detective Bolton described how the photo-pack was put together. Defendant argues that the detective's testimony suggested that Defendant had a prior record. Additionally, Defendant alleges that counsel was ineffective for failing to thoroughly cross-examine witness Betty Eley regarding a copy of Defendant's photo identification that she had on file.

The Court does not agree with Defendant's conclusion that the photo-pack was impermissibly suggestive based on his claim that the numbering sequence was different and the facial features were more pronounced than the other photos. Even if the identification procedure were suggestive, it would not be per se inadmissible. *See State v. Gonzalez*, 713 So.2d 1065 (Fla. 2d DCA 1998). Witness Michael Casey testified that Defendant was no more than four feet from him during the robbery. Additionally, the witness wrote down a description of the robber immediately after the incident. After the police arrived, they took the witness to look at another suspect and he informed them that it was not the man that robbed him. When the police showed the witness a photo-pack approximately an hour and a half after the incident, the witness picked out the defendant right away. See Exhibit A (pp. 89-95).

Defendant's claim that counsel was ineffective for not objecting to the detective's description of how the photo-pack was put together fails to adequately demonstrate how Defendant was prejudiced. Defendant argues that the jury was led to believe that Defendant had a prior record based on the detective's testimony. See Exhibit A (pg. 182). The detective's testimony, however, did not imply that Defendant had a prior record. It would be equally plausible for a jury to believe that Defendant's photograph was generated from a Department of Motor Vehicles database.

Defendant claims that counsel was ineffective for not cross-examining witness Betty Eley, the motel manager, about the photo of Defendant that she had on file. Defendant, a former employee, argues that counsel should have asked the witness if Michael Casey could have seen the photo of Defendant prior to the crime. Defendant seems to suggest that Michael Casey may have seen a photo prior to the crime, which somehow influenced his identification of Defendant. This claim, however, does not adequately demonstrate how Defendant was prejudiced by counsel's alleged omission. Michael Casey testified on direct examination that he had never seen Defendant before the robbery. See Exhibit A (pg. 89). Even if Betty Eley testified that Michael Casey had access to photographs of prior employees, it is unlikely that the outcome of the trial would have been different based on

speculation that Michael Casey looked at the photos and subconsciously misidentified the perpetrator. Ground Two is denied.

Dkt. 12, Ex. 018 at 2-3.

A two prong test is utilized to determine whether to exclude an identification based on impermissibly suggestive photo arrays. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The first prong of the analysis is the determination of whether the identification procedure was impermissibly suggestive. If it is, a separate inquiry must be made as to whether under the totality of the circumstances the suggestiveness leads to a substantial likelihood of irreparable misidentification. *Id*. *See also Johnson v. Dugger*, 817 F. 2d 726 (11th Cir. 1987), *cert. denied*, 485 U.S. (1988).

Reliability is the primary consideration in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). It is the likelihood of misidentification that violates a defendant's due process right. *Neil v. Biggers*, 409 U.S. at 198. The factors used in assessing the "totality of the circumstances" include the opportunity to view, the degree of attention, the accuracy of the description, the level of certainty, and the length of time elapsing between the crime and the identification. *See id*. at 199-200. *See also Manson v. Brathwaite*, 432 U.S. at 114; *Blanco v. Singletary*, 943 F.2d 1477, 1507 (11th Cir. 1991).

First, the original identification procedure must be examined to determine whether it was unduly suggestive. If it was not, the inquiry is ended. *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987), *cert. denied*, 485 U.S. 964 (1988).

The desk clerk testified that during the robbery, he thought that it was strange that the robber knew that the cash bag was kept under the counter. According to the desk

clerk, he concluded that the robber may have been someone who had worked at the hotel or who knew someone who was employed there when the robber stated that he had cut the telephone lines, indicating that he knew where the telephone lines were located.

Americana Resort Properties owned both the Americana Gulf Hotel and the 400 Hotel located a half block away. Betty Eley managed both properties. When the desk clerk called Ms. Eley and informed her that he had been robbed, she called Ms. Smithies, the desk clerk at the 400 Hotel, and warned her to lock the door. Ms. Eley told Ms. Smithies to keep the door locked and not let anyone inside until she called again (Dkt. 12, Ex. 016, Vol. I at Tr. 114). When Ms. Eley spoke with Ms. Smithies again, Ms. Smithies said that "Tom was on the property." When asked "Tom who," Ms. Smithies responded "Tom Kirkendall." (Dkt. 12, Ex. 016, Vol. I at Tr. 117). Ms. Eley testified that Petitioner worked at the Americana in a maintenance position in 1996 and was later hired to perform maintenance at the 400 Hotel, where he was employed for approximately 3 weeks. (Dkt. 12, Ex. 016, Vol. I at Tr. 115). Ms. Eley testified that when she arrived at the Americana the desk clerk gave her a description of the robber and she went back to pull Petitioner's identification card. By that time, the police had arrived. *See* Dkt. 12, Ex. 016, Vol. I at Tr. 117.

Ms. Eley testified that she offered the police the name of Petitioner as a possible suspect based on the description of the robber given to her by the desk clerk and Ms. Smithies's statement that she had seen Petitioner in the vicinity of the hotel a short time before the robbery occurred. Detective Bolton testified that Officer Merritt notified him that Petitioner had been identified as a suspect in the robbery. Using a computer database that compiles an array of photographs of individuals who match a given suspect's description,

Detective Bolton prepared a six-person photo lineup that included a photograph of Petitioner (Dkt. 12, Ex. 016, Vol. I at Tr. 182-83).   According to Detective Bolton, the computer operator has no control over the pictures selected for the photo array and cannot enhance a photograph. Once the computer program generates a group of photographs that match the suspect's description, the officer selects which of the photographs will be included in the photo array.  Detective Bolton testified that this was the procedure he used in compiling the photo array used to identify Petitioner.

Attached to the back of the photopack was a notice cautioning the witness that he/she should not "conclude or guess that the photographs contain the picture of the person who committed the crime" and requesting that the witness not discuss the case with other witnesses or indicate in any way whether he/she had identified someone (Dkt. 12, Ex. 016, Vol. III at R. 101).  Detective Bolton testified that he made sure that each witness read the instructions before viewing the photographs.

After reviewing the photographs, the witness was asked to initial the back of the photopack and if he/she had identified the perpetrator, note the number assigned to that photograph. The notation(s) on the back of the card were covered before the next witness was asked to look at the photographs (Dkt. 12, Ex. 016, Vol. I at Tr. 184-86).  The photo array was shown to the witnesses separately.

The desk clerk identified Petitioner as the robber.  Additionally, Ms. Smithies and Ms. Abrusci, the daughter of another hotel employee, each identified Petitioner as the person they saw in the garage at the 400 Hotel shortly before the robbery occurred, *see* Dkt. 12, Ex. 016, Vol. III at R. 101. Each of the three witnesses confirmed his/her out-of-

court identification when called to testify, *see* Dkt. 12, Ex. 016, Vol. II at Tr. 95-96; 130; 142.

Here, Petitioner complains that his photograph was "more enhanced" than the other photographs and his facial features more pronounced than those of the others depicted in the photo array.  The array of 3 x 5 photographs was made a part of the record (Dkt. 12, Ex. 016, Vol. III at R. 101).  The Court has examined the pictures in light of Petitioner's complaints and finds that his photo is not unduly suggestive. The six white males depicted, all of comparable size and age, are in informal pose and clothing. Each of the photographs presents a frontal view of the subject's head and shoulders.  Petitioner and one other man are depicted with their heads bent forward slightly and their chins pulled back toward their chest, as they look at the camera. While their hair styles vary somewhat, all of the men have hair similar in color and length and each man has a prominent mustache. The fact that Petitioner's head fills slightly more of the frame than the heads of the other five men does not render the array unduly suggestive.

Petitioner's contention that the numbering sequence of the photographs rendered the photo array unduly suggestive likewise lacks merit. Petitioner's photograph was numbered "136214", while each of the other five photographs was assigned a number within the sequence 936260 through 937701. *Id*. Petitioner does not assert how the numbering of the photographs was significant in the identification process. In fact, Petitioner fails to present any factual or legal support of this assertion.

Because the Court finds that the procedures used by the police in obtaining the out-of-court identification were not unduly suggestive, there is no need to consider the second aspect of the test quoted above. *Id*. at 316.  Any questions about the reliability of

the identification were for the jury to decide.  *See Manson v. Brathwaite*, 432 U.S. at 116;

*United States v. Billue*, 994 F.2d 1562, 1565 (11th Cir. 1993)

.      Petitioner has not shown that the state trial court's finding that trial counsel was not

ineffective in failing to file a motion to suppress the out-of-court identification as unduly

suggestive resulted in an unreasonable application of federal law as established by

Supreme Court precedent or an unreasonable determination of the facts in light of the

evidence. This claim does not warrant habeas corpus relief.

**Ground Four**

Petitioner alleges that his attorney was ineffective in failing to preserve for direct

appeal the introduction of a hat found at the crime scene and faults the state trial court for

allowing the hat to be introduced in evidence.  When Petitioner raised this ineffective

assistance of counsel claim in his Rule 3.850 motion, the state trial court rejected it, finding:

> Defendant alleges that counsel was ineffective for failing to fully investigate
> the case and file a motion to suppress a hat that was found near the crime
> scene. This claim is without merit. Defendant claims there was no
> corroborating evidence regarding the hat, however, Michael Casey testified
> that the robber was wearing a baseball cap during the robbery. Further
> evidence indicated that the individual dropped the hat when he ran out of the
> motel. See Exhibit A (pp. 93, 103). Officer Merritt, from the Clearwater Police
> Department, testified that a hat was found at the scene of the crime. See
> Exhibit A (pg. 164). Sharon Smithies testified that she saw Defendant
> wearing a baseball cap a short time before the robbery. See Exhibit A (pp.
> 138-139).
>
> Defendant further argues that counsel was deficient for not finding out when
> the hat was manufactured, how many were made and how many were
> distributed in Clearwater. Defendant does not demonstrate how he was
> prejudiced by this alleged omission. In his cross-examination of Sharon
> Smithies, counsel was able to make the point that several individuals along
> the beach wear hats. See Exhibit A (pp. 153-154). The hat was admissible
> and it was up to the jury to decide how much weight to give to the evidence.
> This claim is denied.

Dkt. 12, Ex. 018 at 4.

The transcript confirms that the desk clerk testified that as soon as the robber left the building, he wrote down what he could remember about the robber's appearance.  He described the robber as wearing a "gray baseball cap and like a royal football jersey with two numbers on it," and stated that the robber had "shorter length . . . brown or reddish brown hair . . . [and] a big bushy mustache" (Dkt. 12, Ex. 016, Vol. I at Tr. 94).  During his deposition, the desk clerk testified that he thought the baseball hat the police found "right outside the front door" was dropped by the robber.  *Id*. at Tr. 103.  The desk clerk also testified, however, that while he saw the robber run from the building and thought that he dropped his baseball hat as he ran, the he was not certain whether the baseball hat the police found was the one the robber dropped as he fled. *Id*. at Tr. 103.

Sharon Smithies observed Petitioner in the parking garage of the Travel Lodge about a block from the Americana Hotel shortly before the robbery (Dkt. 12, Ex. 016, Vol. I at Tr. 138-139). Smithies recognized Petitioner as a former employee of the Americana and 400 (Travel Lodge) hotels. Approximately 25 minutes after her encounter with Petitioner, she learned about the robbery at the Americana. *Id*. at Tr. 110, 113-117, 136-142. Jamie Abrusci was with Smithies when she saw Petitioner in the parking garage. Smithies and Abrusci testified that Petitioner was wearing a baseball cap. *Id*. at Tr. 135, 139, 153.

Officer Merritt testified that he was dispatched to the Americana Hotel when the report of a robbery was received.  Officer Merritt identified the baseball hat shown to him by the prosecutor as the one found at the scene. *Id*. at 164-65. Having had the baseball hat properly identified, the State moved the it into evidence.  *Id*. at 165.

The record supports the state trial court's finding that a proper foundation was established for the admission of the hat. Under Florida law, whether the baseball hat belonged to Petitioner was an issue for the jury to decide. *See Grossman v. State*, 525 So.2d 833, 837 (Fla. 1988) ("On the question of whether the sneakers admitted into evidence belonged to appellant, the sneakers were partially burned and the jury was presented evidence of their attempted destruction, disposition, and recovery. Whether they belonged to appellant was a jury question"), *receded from on other grounds by Franqui v. State*, 699 So.2d 1312 (Fla.1997), *cert. denied*, 523 U.S. 1040, and *cert. denied*, 523 U.S. 1097(1998).  In the absence of an error by the trial court, trial counsel had no basis for an objection.  Trial counsel is not ineffective for failing to make a meritless objection.  *See Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981).

While trial counsel did not object to the admission of the baseball hat once the proper predicate was established, trial counsel did object to testimony relating to the ownership of the baseball hat. The prosecutor asked Officer Merritt if he had learned who the hat belonged to. Trial counsel objected based on hearsay. *Id*. at 165. The objection was overruled. When Officer Merritt was asked again if he knew who owned the hat, he responded that the hat belonged to Petitioner. Trial counsel again objected, arguing:

> Mr. Casey was here and Mr. Casey could have been shown that hat and could have been asked, was this the hat that the individual was wearing.  But he was not asked this question and now he is gone.

> Ms. Smithies, she could have been asked, was that the hat that the individual was wearing, but she was not asked that question.  And now she is gone.

> Ms. Abrusci, she could have been asked that question, but she was not, and now she is gone.

> Now this officer said, "Well, yes, I found out it was his hat." We do not know
> how he found that out. He had to -- it had to have been from hearsay.

*Id*. at 166-67. When the state trial court overruled his objection, trial counsel moved for a mistrial. His motion was denied. *Id*. at 167.

The fact that trial counsel misjudged the likelihood of success on the argument, standing alone, will not support granting a request for federal habeas relief. Petitioner must present a valid claim of constitutional magnitude. *See White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Errorless counsel is not required by the Sixth Amendment, *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981),[10] and counsel may not be judged ineffective by hindsight. *Lovett v. Florida*, 627 F.2d 706 (5th Cir. 1980). As recognized in *Chandler*, "trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). "The fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.

The record supports the state trial court's decision that Petitioner failed to establish that trial counsel's performance was deficient when he failed to move to suppress the baseball hat and preserve the issue for direct appeal by making a contemporaneous objection. The state court's decision on this claim was not "contrary to" clearly established federal law as determined by the United States Supreme Court, nor did it involve an

---

[10]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"unreasonable application" of such law. 28 U.S.C. § 2254(d)(1). Petitioner has failed to establish any grounds for federal habeas relief on this issue.

**Ground Five**

In his petition, Petitioner contends that his sentence under the PRRPA violates the separation of powers clause of the federal and state constitutions.  In the memorandum of law submitted in support of the petition, Petitioner expands the scope of his claim, asserting that his right to due process was violated when the State furnished notification of its intent to seek a sentence under the PRRPA on the charge in the original Information, but failed to provide him notification of such when the Information was amended (Dkt. 2 at 13). As discussed, Petitioner's due process claim is procedurally defaulted.

The PRRPA provides that defendants who commit certain enumerated crimes within three years of being released from a state prison are subject to certain enhanced sentences. *See* Fla. Stat. § 785.082 (1997). In this case, Petitioner's offense of conviction, robbery, was punishable by 15 years imprisonment, and the PRRPA therefore mandated imposition of the maximum penalty. *See id*. § 785.082(3)(c).

Respondent argues that Petitioner's assertion that the PRRPA violates the separation of powers clause of the Florida constitution and the federal constitution does not present a basis for federal habeas relief.  The Court agrees.  In his petition, Petitioner states that he was "sentenced under 775.082 which is unconstitutional, in that it violates the Separation of Powers, as dictated by the Florida Constitution and the United States constitution."  This is the <u>only</u> reference Petitioner makes to a federal issue in this ground. A review of the memorandum of law attached to the petition reveals that Petitioner also fails to present an argument in support of this ground of a federal constitutional nature.

Petitioner's claim pertaining to the constitutionality of the PRRPA under the *Florida constitution* is not cognizable on federal habeas corpus review.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The Florida Supreme Court rejected Petitioner's claim that the PRRPA is unconstitutional. *See Cook v. State*, 784 So.2d 403, 404 (Fla. 2001). In doing so the court relied on its previous decisions in *Grant v. State*, 770 So.2d 655 (Fla. 2000), and *State v. Cotton*, 769 So.2d 345 (Fla. 2000).

In *Grant*, the Florida Supreme Court applied familiar principles of federal equal-protection analysis to conclude that the PRRPA's classification of some defendants as "prison releasee reoffenders" (those who commit offenses within three years after release from a state prison) did not violate equal protection because the classification was reasonably related to the legitimate state interest of preventing the commission of violent crimes by recidivists. *Grant*, 770 So.2d at 660; *see Romer v. Evans*, 517 U.S. 620, 631 (1996). The court further held that the PRRPA did not violate the *Ex Post Facto* Clause because a habitual-offender sentence is not an additional penalty for an earlier crime, but is an increased penalty for the most recent crime, which is aggravated due to the repetition. *Grant*, 770 So.2d at 661-662 (citing *Gryger v. Burke*, 334 U.S. 728, 732 (1948) and *McDonald v. Massachusetts*, 180 U.S. 311, 313 (1901)); *see also Parke v. Raley*, 506 U.S. 20 (1992).

In *Cotton*, the Florida Supreme Court held that the PRRPA does not implicate separation of powers concerns by operating as a mandatory-minimum sentence and the statute is not vague such that its application violates due process. The Court specifically noted that the United States Supreme Court has upheld the constitutionality of mandatory-minimum sentences. *Cotton*, 769 So.2d at 350 (citing *Chapman v. United*

*States*, 500 U.S. 453, 467 (1991). The court held that the statute does not violate due process because a defendant has the ability to challenge the prosecutor's exercise of discretion to prosecute under the PRRPA on equal-protection grounds where the defendant alleges that such discretion was exercised pursuant to an "'unjustifiable standard.'" *Id*. at 351 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Petitioner has not shown that the state violated his right to fundamental fairness at trial.  His challenge to the PRRPA as violative of the Florida constitution is not cognizable under § 2254(d).[11]

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981).  State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.  *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

*McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993).

Since Petitioner fails to state a ground for relief that is cognizable under § 2254, this claim is subject to dismissal.

---

[11]In his petition, Petitioner states that he relies on the statement of case and facts from his direct appeal, 3.850 Post-conviction Motion, Motion for Re-hearing and State Habeas Corpus.  The Court has reviewed the petition for state habeas relief Petitioner filed on September 18, 2002. While Petitioner asserts that appellate counsel rendered ineffective assistance on direct appeal, faulting appellate counsel for not raising a federal constitutional contention as to his sentencing issue, Petitioner fails to present any argument other than his complaint that appellate counsel's failure to frame the PRRPA argument presented on direct appeal in federal constitutional terms jeopardized his ability to seek  relief under § 2254.

**Conclusion**

For reasons set forth above, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.  The Petition for Writ of Habeas Corpus is denied, with prejudice.

2.  The Clerk is directed to enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida, on March 31, 2006.


/s/James D. Whittemore

**JAMES D. WHITTEMORE**
**United States District Judge**


Copy to: All Parties/Counsel of Record
SA:jsh